418 A.2d 346

**COMMONWEALTH of Pennsylvania**

v.

**Robert Earl JONES, Appellant.**

Superior Court of Pennsylvania.

Argued June 18, 1979.

Filed Jan. 4, 1980.

164

Janet Mason, Assistant Public Defender, West Chester, for appellant.

Joan D. Lasensky, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before HESTER, HOFFMAN and CATANIA, JJ.*

HESTER, Judge:

Appellant Robert Earl Jones brings this appeal from an Order denying a pre-trial application to quash a Bill of Information on the ground of double jeopardy. We affirm the Order and remand for trial.

By a single Information dated September 7, 1977, the District Attorney of Chester County charged appellant with two counts of rape, one count of indecent assault, and three counts of simple assault, all evolving from an incident with the victim, a middle-aged woman, on the afternoon of August 17, 1977. The six counts charged substantially as follows:

Count One: Rape by forcible compulsion. 18 Pa.C.S.A. § 3121(1)

Count Two: Rape by threat of forcible compulsion. § 3121(2)

Count Three: Indecent Assault. § 3126(1)

Count Four: Simple Assault by causing or attempting to cause bodily injury. § 2701(a)(1)

Count Five: Simple Assault by negligently causing bodily injury with a deadly weapon. § 2701(a)(2)

Count Six: Simple Assault by putting another in fear of serious bodily injury through physical menace. § 2701(a)(3).

At the jury trial commenced on January 4, 1978, the Commonwealth presented testimony designed to show the following: On the afternoon of August 17, 1977, the victim was in Kennett Square, Chester County, seeking a ride to her

---

* President Judge FRANCIS J. CATANIA of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

home in Jennersville. Appellant, whom she had known for three or four years, approached and offered his services and requested the woman to follow him and his two friends into an alley. The foursome walked into an open garage just off the alleyway, where the complainant was offered alcohol from a bottle, from which all drank. Soon, the victim noticed appellant's two friends had disappeared, whereupon appellant pushed her up against the wall and onto the floor declaring he could "really hurt her." He then removed part of her clothing and raped her. Afterwards, the woman ran to the police station to report the offense and later accompanied two officers back to the crime scene. At the close of the Commonwealth's case, a defense demurrer to Count Five was sustained by the court.

Appellant, testifying in his own defense, admitted having intercourse with the complainant that afternoon but insisted she fully consented. He alleged that she consumed straight vodka from appellant's bottle in the garage with the two other individuals. When they were alone, she agreed to have intercourse with appellant in the garage.

After five hours and forty-five minutes deliberations, the jury returned to the courtroom and announced they had reached a unanimous decision on two counts but were deadlocked on the remaining three. In accord with Pa.R.Crim.P. 1120(d), the court received the two verdicts upon which the jury did agree: not guilty of count one (rape by forcible compulsion) and not guilty of count four (simple assault by causing or attempting to cause bodily injury). The court then declared a mistrial on the remaining counts.

When the Commonwealth called appellant to trial on Counts two, three, and six, defense counsel filed a motion to quash the Information alleging a retrial would violate principles of double jeopardy. The court granted the motion as to Count three, indecent assault, but refused to dismiss Counts two and six and directed that appellant stand trial on those charges. This appeal followed, in which appellant contends retrial is barred for two reasons: 1) the acquittal of counts one (3121(1)) and four (2701(a)(1)) necessarily

168

operate as an acquittal of counts two (3121(2)) and six (2701(a)(3)), and 2) the court erred in declaring a mistrial since.there was no manifest necessity for the same. We will treat each argument in turn.[1]

 It is appropriate to observe initially that we find nothing erroneous or duplicitous in the District Attorney's Information as drawn. Cf. Pa.R.Crim.P. 228. It is proper to charge in various counts of an Information the same offense as committed in various ways to meet the evidence which may possibly be adduced at trial. 42 C.J.S., Indictment and Information, § 179. It was thus entirely within the Commonwealth's prerogatives to charge appellant with the multiple counts of rape and assault, all relating to the same incident, since the legislature has decided those crimes may be committed by any of the means set forth under § 3121 and § 2701. Further, as is more fully set forth, *infra*, the separately numbered paragraphs of § 3121 and § 2701 each constitute a separate offense. The Commonwealth thus properly charged each offense in a separate count.

 Appellant contends that an acquittal of rape by forcible compulsion must necessarily acquit him of rape by threat of forcible compulsion and an acquittal of simple assault by causing or attempting to cause bodily injury must operate as an acquittal of assault by putting another in fear of serious bodily injury by physical menace. Rule 1120(d) provides:

(d) If there are two or more counts in the information or indictment, the jury may report a verdict or verdicts with respect to those counts upon which it has agreed, and the judge shall receive and record all such verdicts. If the jury cannot agree with respect to all the counts in the information or indictment if those counts to which it has agreed operate as an acquittal of lesser or greater included offenses to which they cannot agree, these latter counts

1. The denial of a pretrial application seeking discharge on double jeopardy grounds is a final order and thus appealable prior to trial. *Commonwealth v. Bronson*, 482 Pa. 207, 393 A.2d 453 (1978); *Commonwealth v. Klinger*, 264 Pa.Super. 21, 398 A.2d 1036 (1979).

shall be dismissed. When the counts in the information or indictment upon which the jury cannot agree are not included offenses of the counts in the information or indictment upon which it has agreed, the defendant or defendants may be retried on those counts in the information or indictment.

The comments thereto state: Section (d) "serve[s] only to codify the procedure where conviction or acquittal of one offense operates as a bar to a later trial on a necessarily included offense." See, *Commonwealth v. Roberts*, 484 Pa. 500, 399 A.2d 404 (1979). Contrary to appellant's assertions, the doctrine of lesser and greater included offenses is inapplicable to the instant case. Section 3121(1) is not a lesser or greater included offense of § 3121(2), nor is § 2701(a)(1) a lesser or greater included offense of § 2701(a)(3). The offenses set forth in the separately numbered paragraphs of § 3121 and § 2701(a) are equal to one another, not lesser or greater. The statute provides, for example, that rape by force is an equal crime, deserving of equal punishment, with rape by threat of force. Similarly, assault by attempting or causing bodily injury is an equal offense with assault by physical menace. By statutory definition, then, none of the offenses set forth in § 3121 or § 2701(a) are greater or lesser than each other, but rather are co-equals.[2] Rule 1120(d) thus did not, on its face, require the trial court to dismiss counts two or six upon which the jury deadlocked.[3]

**2.** Compare our decisions construing the lesser included offense doctrine where the greater offense not only includes all of the elements of the lesser, but also commands a higher degree of classification and, thus, a higher penalty upon conviction. See, e. g., *Commonwealth v. Richardson*, 232 Pa.Super. 123, 334 A.2d 700 (1975) (rape, a felony, includes indecent assault, a misdemeanor); *Commonwealth v. Wilks*, 250 Pa.Super. 182, 378 A.2d 887 (1977) (aggravated assault, a felony or misdemeanor of first degree, includes simple assault, a misdemeanor of second or third degree); *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977) "[Merger doctrine] has been limited to situations where the offenses involved were in effect merely *degrees* of the same principle crime." Id., 471 Pa. at 503, 370 A.2d at 718 (emphasis added).

**3.** The court properly recognized, however, that an acquittal of rape, § 3121(1), required a dismissal of indecent assault (count three),

■ Appellant argues that, notwithstanding Rule 1120(d), a second trial for rape and assault is barred by the prohibition against successive prosecution for the "same offense", *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Blockburger v. U. S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and by the prohibition against relitigating facts necessarily determined in favor of an accused by a former verdict of acquittal, *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). We agree with neither contention. *Brown* was concerned with the permissibility of instituting new proceedings against a defendant after he has already been prosecuted and punished for a lesser included offense. Since the Double Jeopardy clause "protects against a second prosecution for the same offense after conviction" or acquittal, the second trial is clearly improper. *Brown*, 432 U.S. at 165, 97 S.Ct. at 2225, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); cf. *Green v. U. S.*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Commonwealth v. Henderson*, 482 Pa. 359, 393 A.2d 1146 (1978). Thus, appellant would be correct in his contention if the Commonwealth had first tried him on counts one and four and then later filed a new Information charging him with counts two and six, regardless of the outcome of the first trial. Such would clearly violate the general rule that a prosecutor must bring, in a single proceeding, all known charges against a defendant arising from a single criminal episode, *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, vacated, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), on remand, 455 Pa. 622, 314 A.2d 854, cert. den. 417 U.S. 969 (1974); 18 Pa.C.S.A. § 110, and would violate as well the principles enunciated in *Brown* and related cases. However, in the instant case, the *Campana* rule was clearly complied with since all charges were brought in one proceeding. Hence, we are not dealing with successive prosecutions, but rather with retrial following a mistrial caused by a deadlocked jury, a distinctly different

since the latter is a lesser included offense of rape. *Commonwealth v. Richardson*, supra.

problem. Accord, *Forsberg v. U. S.*, 351 F.2d 242 (9 Cir., 1965); *U. S. v. McGowan*, 385 F.Supp. 956 (D.N.J., 1974).

■ Similarly, we do not think principles of collateral estoppel, as set forth in *Ashe v. Swenson* and its progeny, must bar the second trial herein. *Ashe* established that once an accused has been acquitted, a state cannot prosecute him a second time for a related offense having a common issue of ultimate fact essential to conviction which the previous acquittal had determined in his favor. See, e. g., *Commonwealth v. Peluso*, 481 Pa. 641, 393 A.2d 344 (1978); *Commonwealth v. Klinger*, 264 Pa.Super. 21, 398 A.2d 1036 (1979). The *Ashe* prohibition may even apply where the jury returns a verdict of acquittal on some counts but is unable to agree on others if an issue of fact common to all counts was necessarily determined by the acquittal. See, e. g., *U. S. ex rel. Rogers v. LaVallee*, 517 F.2d 1330 (2 Cir., 1975); *U. S. v. Davis*, 369 F.2d 775 (4 Cir., 1966); *U. S. v. Kenny*, 236 F.2d 128 (3 Cir., 1956); *U. S. ex rel. Triano v. Superior Court of N. J.*, 393 F.Supp. 1061 (D.N.J., 1975); *U. S. v. Flowers*, 255 F.Supp. 485 (E.D.N.C., 1966); *Powers v. State*, 285 Md. 269, 401 A.2d 1031 (1979).[4] A determination that collateral estoppel does bar a retrial would be an exception to the general rule that an accused may be retired if the jury is unable to agree on a verdict in the first trial. *Illinois v. Sommerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 245 (1973). In the instant case, looking first to the crime of rape, we cannot say that the verdict of acquittal of count one necessarily foreclosed an ultimate fact necessary for conviction on count two. Section 3121, by defining four different factual predicates as constituting the crime of

[4]. Some courts have suggested that the doctrine of collateral estoppel does not apply where a jury acquits on one count of an indictment and is deadlocked on others. "Under such circumstances, the second proceeding necessitated by the justifiable mistrial does not embody the harassment and oppression incident to multiple prosecutions for the same wrongdoing. The impaneling of the second jury is but part of a single trial in order to seek a determination on unresolved issues." *State v. Esposito*, 148 N.J.Super. 102, 106–7, 371 A.2d 1273, 1275 (1977); *State v. Roller*, 29 N.J. 339, 149 A.2d 238 (1959); Anno. 114 A.L.R. 1406. Pennsylvania does not subscribe to this view. See, *Commonwealth v. Steppke*, 267 Pa.Super. 442, 406 A.2d 1123 (1979).

rape, has created four different offenses. As regards paragraphs One and Two (counts one and two in the Information herein) each requires proof that the other does not, paragraph one requiring rape by force while paragraph two requires rape by threats. See, *People v. Battilana*, 52 Cal. App.2d 685, 126 P.2d 923 (1942) (rape by force a separate and distinct crime from rape by threats even though both fall under same section of California Penal Code). Since the factual bottom of each count is, then, distinct, a verdict of acquittal as to one does not necessarily determine an ultimate issue underlying the offense at count two. Stated more succinctly, the jury did not, by its general verdict of acquittal of rape by force *necessarily* decide appellant did not commit rape by threats, charged in the same Information. Cf. *Commonwealth v. Grazier*, 481 Pa. 622, 393 A.2d 335 (1978); 18 Pa.C.S.A. § 110(2).

■ Similarly, the legislative scheme provides that three different factual scenarios may each constitute the crime of simple assault and has, thereby, created three different offenses. § 2701. Paragraphs One and Three (counts four and six herein) each require proof of facts which the other does not, the former requiring bodily injury or an attempt to cause the same, while the latter embraces fear of imminent serious bodily injury by physical menace. An acquittal of count four does not necessarily determine any ultimate facts necessary for a conviction of count six since the facts underlying each count are distinct. We conclude, therefore, that collateral estoppel does not bar retrial.

■ Finally, appellant argues that retrial would be improper since the trial court lacked manifest necessity to declare a mistrial.[5] The trial judge, of course, retains inher-

5. We must reject the Commonwealth's contention that appellant consented to the mistrial, which consent would, of course, obviate the requirement for manifest necessity. *U. S. v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Commonwealth v. Meekins*, 266 Pa.Super. 157, 403 A.2d 591 (1979). After the jury delivered its verdicts and announced it was hopelessly divided on the remaining counts, defense counsel requested the court to declare the jury deadlocked and then moved for a directed verdict on the remaining

ent power to discharge the jury before a verdict whenever, in his opinion, taking all circumstances into consideration, there is manifest necessity for the act, or the ends of justice would otherwise be defeated. *U. S. v. Wilson*, 420 U.S. 332, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *Illinois v. Sommerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 245 (1973); *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974); Pa.R. Crim.P. 1118(b). The classic example of manifest necessity is where the jury is unable to agree upon a verdict. *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972); *Commonwealth v. Coleman*, 235 Pa.Super. 379, 341 A.2d 528 (1975). So long as manifest necessity justified the termination of the initial proceeding, the Constitution raises no barrier to retrial.

In the instant case, the jury retired at 10:40 a. m. on January 5, 1978 to begin deliberations. At 3:15 p. m., they returned to the courtroom to receive further instructions and retired again at 3:25 p. m. At 4:35 p. m., the foreman announced in open court that the jury had reached a unanimous decision as to two counts but was deadlocked on the remainder. The court asked the foreman if he felt the jury was hopelessly deadlocked, to which the foreman responded "Yes." The jury collectively answered "Yes" to the same question. The judge received the two not guilty verdicts and instructed the jury to return to the jury room, whereupon a brief in-chambers discussion ensued. At the conclusion thereof, the court again inquired of the foreman, in open court, whether it was still his opinion that the jury was

counts. The court replied, "We will refuse the second motion. The first motion I am inclined to grant." T.T. 180–1. The court then declared a mistrial and discharged the jury. Counsel thus did not request a mistrial, but only wished the jury to be declared deadlocked and immediately argued the double jeopardy/collateral estoppel issue. In *Commonwealth v. Roberts*, 484 Pa. 500, 399 A.2d 404 (1979), counsel requested a mistrial when the jury could not agree but specifically reserved the right to argue the Rule 1120(d) issue later. The Supreme Court, *sub silentio*, found this sufficient to preserve the double jeopardy claim. Counsel's similar conduct instantly does not permit us to find waiver.

hopelessly deadlocked, to which the foreman again responded "Yes". The judge then declared a mistrial.

We cannot say the court abused its discretion in discharging the jury. After 5¾ hours deliberations, the jury could return two verdicts, but no others. The record leaves no doubt that further deliberations would have been fruitless and, indeed, to have sent the jury back for further discussion could well have given rise to later claim that the verdict was coerced. See, e.g., *Commonwealth v. Campbell*, 445 Pa. 488, 284 A.2d 798 (1971). This is thus not a case where the judge failed to inquire of the jury foreman of the possibility of deadlock being overcome by further deliberation, *Commonwealth v. Bartolomocci*, 468 Pa. 338, 362 A.2d 234 (1976); *Commonwealth v. Haefner*, 264 Pa.Super. 144, 399 A.2d 707 (1979), or where the court failed to solicit the views of counsel before declaring a mistrial, *Commonwealth ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4 (1976); *Haefner*, supra, or where an insufficient amount of time was allotted for the jury to consider a complicated case with many witnesses, *Haefner*; cf. *Commonwealth v. Brooks*, 225 Pa. Super. 247, 310 A.2d 338 (1973). Rather, we think, considering all of the attendant circumstances, *U. S. v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), that 5¾ hours deliberations on a relatively simple case factually (the only issue was whether the victim consented; testimony consumed but one day), was a reasonable period in which to accept the jury's conclusion that they were deadlocked. *Commonwealth v. Monte*, 459 Pa. 495, 329 A.2d 836 (1974); (6½ hours; uncomplicated case); *Commonwealth v. Wilson*, 245 Pa.Super. 415, 369 A.2d 471 (1976); (3 hours); *Commonwealth v. Coleman*, 235 Pa.Super. 379, 341 A.2d 528 (1975) (4 hours, 26 minutes; only issues were defendant's identity and alibi); *Commonwealth v. Howard*, 233 Pa.Super. 496, 335 A.2d 489 (1975); (6 hours). There was no abuse of discretion.

The order of the lower court refusing to dismiss the Information is accordingly affirmed.